and move to our second case this morning. Dragonwood Conservancy v. Felician and Simmert. All right, I see both counsel, Mr. Murphy, you may proceed. All right, I see both counsel, Mr. Murphy, you may proceed. Thank you. I see both counsel, Mr. Murphy, you may proceed. Hi, one of the attorneys has a stream still on. You need to turn off your stream. One of the attorneys has a stream. Your YouTube stream. Thank you, I apologize, that was me. Okay. Good morning, my plan this morning, may it please the court, is to hit the highlights of this appeal, which come in four categories, and hopefully it'll give you some time for questions and or rebuttal. I'd like to begin by addressing what I believe to be the most pressing issue, and that is, didn't the jury rule it was reasonable to seize all of the animals, and doesn't that end this case? I argue the answer is no, in all due respect to the jury. Even when we give the defendants every benefit of the verdict, the answer is no because the undisputed evidence entitles Dragonwood to judgment as a matter of law, as it is, quote, quite clear what the truth is, quote, and I quote Sartor v. Arkansas Natural Gas Corp., which I cited in my brief at page 38, 321 U.S. 627. Indeed, the truth in this case is quite clear in four regards, if I may. First, as to the search warrant itself, it was the first of four issued, I want to make sure that's clear, and it was only for 13th and 17th Street, remembering that the warrant was issued upon information that was over two months old. By analogy, it's fair to argue that if this was a drug case, I believe a warrant would never issue on information two months later. That issue wasn't before the jury, so perhaps you could confine your argument to the issue that was before the jury. Thank you. The search warrant itself listed animals, quote, without any basis to believe those creatures were endangered or threatened under Wisconsin law or otherwise associated with illegal activities, quote, and that's from Judge Jones at EDOC 62, page 28. That's not a factual finding, Mr. Murphy. If you could concentrate on the issue that was in front of the jury, what Judge Jones said in his summary judgment ruling doesn't matter. Thank you, Your Honor. Second, it's quite clear what happened during the execution of the warrants based upon the undisputed evidence. Rather than recite all of the undisputed facts, I believe the highlights are, first of all, the defendants had no plan to handle the animals, dogs or the Chinese alligators, despite knowledge of them being there. They made calls on the way for help. They forced entry. There was no exigency. The help that they called for came on short notice. Two dogs escaped. Two dogs were shot and killed, which ruined the floors, all as a direct result of the defendants' admitted lack of planning. When they got inside, they ran a videotape of what they encountered, which was a mixed-use facility. Given the verdict, the benefit is due. The building was declared not habitable by the DNS, primarily due to the two areas where the animals were housed in the basement area and in the warehouse area, which was on the main floor behind the living quarters. The photos and the testimony undisputedly showed the living quarters, which were otherwise habitable. But the entire building was declared uninhabitable. Furthermore, the undisputed evidence shows that at 17th Street, it was an unremarkable brick bungalow, perfectly habitable. There was no team of, quote, experts there, only the defendants, a representative from the DNR and a representative of MADAC. There was a conservation operation in the basement. No Chinese alligators or other targets were there. Nonetheless, all of the animals at 17th Street were seized on day one, mostly giant snakes, but other nondescript, run-of-the-mill animals, such as lizards, turtles, scorpions, and spiders. Most importantly, as to 17th Street, there was no testimony or evidence that any of the animals evidenced suspected abuse or mistreatment under Chapter 951. The next day, calling it day two, back at 13th Street, all the animals were seized after a team of, quote, experts were assembled. However, of the 178 animals seized, only three were specifically identified as evidencing mistreatment, which I discussed in my brief at page 14. As it pertained to the other 175 animals seized, however, the defendants merely offered generalized testimony about unidentified animals, some of which observed in foul water and some of which were observed in pens that were too small. Most importantly, Detective Simmer testified that, quote, not all of the animals were in horrible shape, but quite a few were, quote. That was at E-Doc 237, page 164. So defendants took the same approach as a child abuse case, meaning if one child is abused, all are considered abused and we take them all. And that, I suggest, is the constitutional linchpin here. On this record, this neglect by association theory for children does not satisfy the plain view exception for property seizure. Mr. Murphy, you're challenging a jury verdict here and we don't re-weigh or re-evaluate the evidence as if we're sitting in the shoes of the jurors. So you've got to direct your argument into or filter your argument through the correct standard of review here. Correct. There is no weighing of the evidence that goes on at the Court of Appeals. I understand, but- One of those cases with the video evidence that was in the record, that if the jury credited what they saw in the video and how could the jurors not credit what they saw in the video, the seizures of all of the animals living in these squalid conditions was eminently reasonable as an object of matter. The jury was instructed as to the plain view exception for the Fourth Amendment, however, and I believe this court may revisit the undisputed facts either by way of reviewing summary judgment or by reviewing motions for judgment notwithstanding the verdict. In any event, I'm happy to continue, Your Honor. After the seizure, we're quite certain about the truth due to the undisputed evidence, and that is defendants sent the animals to MADD Act, knowing it couldn't care for the influx of hundreds of exotic animals and without any particular concern about whether the plaintiffs got their animals back. Third, I believe adding insult to injury, Dragonwood was denied constitutional process it was due prior to the permanent deprivation of its animals. The Seventh Circuit rule since at least 1996 was that Dragonwood was entitled to a due process hearing prior to any permanent deprivation. That's Porter v. de Blasio- Can I pause you on that point? Certainly. My understanding is that there's a provision in the Wisconsin statutes that would have permitted your clients to go into state court to challenge the seizure of the animals to request their return or some other form of remedy. Is my understanding of Wisconsin law correct? Interestingly, Your Honor, things have changed since 2010. 96820 is the statute that we believe operates for the return of items seized under warrant. Nowadays, that has been clarified to exclude animals. At the time in 2010, it didn't have that exclusion. Mr. Cullen and his legal team actually sought the return of the animals under 96820 in the criminal court, whereas the judge ventured into Chapter 173 which is a civil process and got it wrong twice according to Judge Jones. Well, that may be your client's perspective, but that's a matter that they can pursue within the Wisconsin court system, can they not? In theory, but- What do you mean in theory? Yes, that's what they tried to. Well, were they, I guess what I'm trying to understand is in your view, are the Wisconsin statutes that were implicated here, 17319 sub two, is it unconstitutional on its face? Is it unconstitutional in its application here? Because the reason I'm asking the question is the availability of that potential remedy in state law, in my view, very much undermines the viability of a Fifth Amendment claim for the deprivation of this property. Well- So you have to argue, I think, you can correct me if I'm wrong, you have to argue that somehow that provision of Wisconsin law is constitutionally inadequate. The problem with 17319 is that it didn't apply because it was a seizure based on, for cause. Right, so couldn't they, so if that's true, okay, let me just, let's just play this out. Wasn't your client able to notice an appeal within the Wisconsin court system and ask a Wisconsin court of appeals to correct that error? In theory, yes, and Judge Jones, I know- Why do you say in theory? I'm talking about in fact. Well, in fact, that was a possible- Or was there a barrier that was imposed to the notice of appeal? The problem, as Judge Jones found, was that there was no stay on the order that Judge Conan issued. So any appeal, interlocutory appeal, was not practical or feasible. Yeah, I mean, this just seems to me to be a question of how the case was lawyered or not lawyered but it doesn't seem to me that, I haven't heard anything or seen anything in your brief that would cause me to be concerned that the provision of Wisconsin law that I mentioned is unconstitutional. I have not challenged the facial constitutionality of that statute. Okay, are you challenging it as applied? And if so, where in your brief? Well, the record reflects that Judge Conan in the circuit court stepped outside of his criminal court jurisdiction. Hold on, just focus on my question for a second. Have you argued in your brief that the Wisconsin statutory scheme that was available to your client was applied in a way that is unconstitutional? I have not. Okay. Thank you. And if I may continue then, what I consider to be the final epilogue, Mr. Cullen in the circuit court was not convicted of any animal related offense and the animals were never returned to Dragonwood. All told, it's our position that Dragonwood was effectively left without a remedy for the permanent deprivation of their animals without due process of law. And I suggest that's why other federal courts consider the causation issue as encompassing quote effective cause, which I discussed at my brief page 43, where a permanent deprivation follows an illegal seizure that deprivation is deemed a natural consequence. Is this an argument about your due process claim? That was, yes. Because you just said you're not raising an as applied or a facial due process claim. So I don't know why you're continuing to argue matters of causation. I did not, I'm not raising a facial or as applied unconstitutionality of statutes, but I believe Mr. Cullen and the Dragonwood Conservancy did not receive due process of law. That would be an as applied claim for inadequate process. And you just said you weren't making that kind of claim. I've made that argument, but I haven't specifically started challenging the constitutionality of any statutes. So if it's the same point. Yeah, your argument is incoherent. You're raising a due process claim. It's either a facial or as applied. Your client got plenty of process in the state courts. You have some complaints about the results of that process, but that's an issue for the state courts. I understand your honor. If I may then my final point fourth and finally, I have two remarks regarding the evidentiary issues on appeal. First, what I consider to be a glaring example of trial court error relates to the plaintiff's damage claim for the hardwood floors that were ruined by the blood in the bullet holes. The trial court effectively dismissed the plaintiff's claim for unreasonable property damage because the evidence that proved the liability was too inflammatory. I believe that outrageousness should go to punitive damages, not to the exclusion of evidence. And basically exclude the exclusion of the claim. I compared it to a wrongful death case where a plaintiff sues a killer for murder, but can't prove the manner of death because it's too inflammatory. And not only did the court bar testimony, but it barred the defendant's own videotape that they made to document the search and seizure. The dead dogs, as I'm calling it, we needed to prove that to prove the damage to the floors, which was unreasonable because of a lack of planning. And the dead dogs should have come in. And once they do, they change the entire complexion of the case, particularly as it relates to Dragonwood's expert witness. The standard there is what a reasonable officer would do, not a reasonable person. And there's no way for a juror to know that. And that's where we brought in Mr. Larson to help the jury as to what a reasonable officer would do based upon uniform nationalized minimum standards. And his testimony becomes even more relevant when the dead dogs come into evidence. So in that regard. Would Mr. Larson's testimony have been, how specific would it have been? Would he have talked to the jury about the retrieval of 200 animals? No, not necessarily, Your Honor. Mr. Larson's testimony, I identified in page 28 and page 29 of my brief, basically applying the standardized 12-step approach for a search warrant and the execution. Basically, there was no need for the damage to be done, the forcible entry. There was a lack of a reasonable plan for entering and securing the dogs. The dogs never should have been shot. The floors never should have been ruined. At a minimum, they needed to have animal control or somebody present to control the four large dogs they knew they were walking into. And basically other opinions on those two pages, which I won't recite for you. Okay, thank you. Ms. Wood. May it please the court. Good morning. Attorney Jenny Yen here on behalf of defendants' appellees. We believe that defendants should prevail on this appeal for two reasons. Procedurally, as I laid out in our response brief, we do believe that it's a violation of Circuit Court Rule 30B-6 for plaintiffs to not have provided the entire trial record since they are asking this court to review the jury verdict in this case.  we believe that we prevail on this case. Looking at this matter, this really is the primary issue is plaintiffs are asking this court to grant them judgment notwithstanding the verdict. They're saying the district court got it wrong when the district court denied that motion. However, even listening to the argument laid out today, much like the brief that plaintiffs have provided in their initial brief and reply brief, it's defendant's position that they're laying out the incorrect legal standard, legal analysis that needs to go into this. Plaintiffs never address the mounds of evidence that defendants highlight in their response brief that would support the verdict in this case. Really, it's whether in scouring the trial record, if there is sufficient evidence to support this jury verdict. Plaintiffs' counsel continues to make the argument of undisputed facts, which if it's not clear from our briefs, we do dispute those facts. But even assuming undisputed facts that doesn't address the arguments that we raised, defendants raised in their brief of all the evidence that came in from not only all five of defendants witnesses at trial, but also contained in the photographs that the jury saw, the video that the jury saw, and frankly, the plaintiff, Mr. Cullen in this case, his own testimony as highlighted, really does support the jury's finding that the defendants were not unreasonable when they seized all the animals in this case, given what they saw, given the conditions of the animals, frankly, given the undisputed condition of the animals. While plaintiffs may dispute a lot of the condition, they don't dispute certainly what the photographs demonstrate, they have explanations for it. But I think there's ample evidence that a jury would believe our officers and understand that how would these officers, these two defendant officers, know what the alleged causation of these animals and their appearance would be as claimed by the plaintiffs in this case. So I really think that in reviewing the trial evidence in this case, that this court would conclude that there's more than sufficient evidence to support the verdict. I think that's really, in my view, and looking at this, this is really the primary argument that's being raised. I'm happy to cover plaintiff's requests for a new trial based on evidentiary errors, but as fully briefed, really it's only two evidentiary errors that plaintiffs are raising. The first is not allowing John Larson, what I would call a police practice expert in, and then also not allowing any mention of dogs at trial. One thing I will mention regarding the dogs, plaintiffs could have named the two officers that made entry into the property at 13th Street. 13th Street is the property where there were the four dogs and two were shot. Plaintiffs didn't name them as defendants. This is a 1983 case. Of course, the court knows there needs to be the personal action by the defendants that are named in this case. Plaintiffs are not claiming any damages associated with these dogs. If you see in the record for the floors, plaintiffs claim it's $3,600 for the floor repair. Just mentioning that, to put this in perspective here, I think that the standard here for an abuse of discretion review of what the district court did in excluding all mention of the dogs is really that nobody would rule in this fashion, and I just don't think, I don't see how this court can conclude that. The district court carefully and methodically laid out all of the reasons, frankly, really focusing on a 403 that the factual basis to allow this evidence in would be too unduly prejudicial given the real issues in this case. Likewise for Mr. Larson, as I pointed out in my response brief, plaintiffs admit in their briefs to this court that they really wanted to use this evidence by Mr. Larson to argue that our defendants were unreasonable based on not following national standards. I should point out at trial, plaintiffs made that argument regarding our officers not following Milwaukee Police Department SOP based on execution of a low risk warrant. However, the jury did hear from our defendants that a low risk warrant can change into a high risk warrant within a blink of an eye. And again, that's evidence that a jury would credit what evidence came in and the testimony and understand that while there may be standard operating procedures or standards out there which plaintiffs did present at trial and argue to the jury that our defendant officers didn't follow certain procedures, that a jury could understand from the testimony from our defendant officers that there may be guidelines, but it's a very dynamic situation when you are executing a warrant and you have to be able to respond as an officer to the facts that are presented to you. Well, in particular, this is an exotic animal warrant which carries an unusual set of dangers to the public and to the officers who are executing the warrant. It's not clear to me that the expert's proposed opinion was particularized to this situation. It was not. I'm sorry. It was not your honor. In fact, I took his deposition during discovery and we use that as a basis in addition to his report in our motion eliminate. His report was initially drafted for the separate case that was filed in 2014 by Jane Flint, the separate case for the death of the two dogs. He would initially drafted his report and with that in mind, in terms of the entry, in terms of the shooting, in terms of was that necessary? There was nothing in there regarding execution of a warrant regarding the types of animals that were at issue in this case. This expert, Mr. Larson was not on scene until July of 2010 for the first time when the warrants were executed at issue in this case. This is that 13th street and actually 17th street on May 12th, 2010 for 13th street that continued to the 13th and 14th of May of 2010, 17th street ended on May 12th. So for all those reasons, we think that the district court as outlined in my response brief, amply laid out for reasons for really narrowing the issues at trial and keeping the jury focused on what the true issues were and not allowing in through Mr. Larson or really evidence of the dogs, evidence that wouldn't really distract the jury from the true issues in this case and potentially would be unduly prejudicial. Can you shed light on what happened in the state court? It's not really clear based on Mr. Murphy's presentation. Yes, Your Honor. And I know I didn't brief that issue very fully, from what defendants raised in our response brief. It's, we really believe, I mean, that really goes to the damage portion. The defendants prevailed on liability. So my first argument is it's moot for this court to look at. However, in addressing that conversation that was had regarding what happened in state court proceedings, during that time, Mr. Cullen, one of the plaintiffs in this case, had a pending criminal matter. It was certainly defendant's position that he had ample process through Wisconsin chapter 173. And just because a judge, Judge Conan in this case, may have got it wrong, that Mr. Cullen's recourse then would have been to appeal that and he did not. And- We don't know that Judge Conan got it wrong. There were criminal charges stemming from this conduct and they were ultimately dismissed in favor of some civil resolution, as best I can tell. It's not really clear. And the whole due process claim has been vague at best in this case. But as far as I can tell, there were criminal charges. Mr. Cullen had counsel and sought return of the seized animals in the course of that criminal prosecution. And there's a civil statute overlay on the state's possession of the animals and what to do with them after they were seized pursuant to the warrant. But there was no real challenge to the warrant itself that was presented in this litigation or the probable cause for the warrant. So, whatever process occurred in state court, it seemed to me, it's just not framed up here as an adequate due process claim, so far as I can tell. But it looks like the state court judge and the state court system had ample or post deprivation protections that were simply either not invoked or not successful. And that's not a due process violation. Well, defendants would, of course, wholeheartedly agree. Judge, certainly the plaintiff, Mr. Cullen, through his counsel, put a petition for return of the animals through Wisconsin statute. There was the appellate. They didn't exhaust their appellate remedies based on getting an undesirable ruling from Judge Conan. But yes, there's no challenge to the warrant. In fact, I have here in the trial record, Attorney Murphy even conceding, again, and that's why it's part of the jury instructions, that the warrants were lawful. And that's defendant supplemental appendix, page 227. That's the last day of trial, 52721 trial transcript at page 919. But that is part of the jury instructions. There's no challenge to the warrant in this case. We believe that there's no viable due process claim. If there's no more questions, I guess I just will leave you with, we think this is certainly one of those cases, I think it's obvious from the briefing and even from our argument here, that the facts are hotly contested. All the more reason where a jury heard the defendant's version and everything that Attorney Murphy laid out in his brief, other than the mention of the dogs. But all of those undisputed facts that he mentions, the jury heard that. They heard all those arguments about the defendants not having a plan of entry, those same arguments made in plaintiff's brief and during the argument today. Plaintiffs made that at trial, and you'll see that in the trial transcript. And the jury heard all of that and still believed defendant's version. And that's why this is one of those cases where the jury verdict should not be disturbed. Thank you for your time. Thank you very much. Mr. Murphy, your time has expired. So we'll take the case under advisement and move to our third.